IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| HILDA L. SOLIS,<br>Secretary of Labor, United States<br>Department of Labor, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | No. 5:10-CV-78 (CAR) |
| NEW CHINA BUFFET #8, INC. &<br>YUN DA CHEN, an individual, | : : : | |
| Defendants. | : : | |

**ORDER ON DEFENDANTS' MOTION TO COMPEL**

This matter comes before the Court on Defendants' Motion to Compel [Doc. 29]. Defendants request that the Court compel Plaintiff to provide complete answers to specific discovery requests. Through various discovery devices, Defendants sought information relating to Plaintiff's investigation of this Fair Labor Standards Act ("FLSA") case, particularly the identities of any employees that gave statements to the Department of Labor, the contents of those statements, and the contents of the investigative file. Plaintiff refused to provide that information based on the informer's privilege. Having considered the matter, Defendants' Motion to Compel [Doc. 29] is **GRANTED-IN-PART** and **DENIED-IN-PART**.

I. BACKGROUND

Plaintiff filed a Complaint alleging that Defendants violated various provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. During the discovery process, the parties reached an impasse over the disclosure of certain information related to Plaintiff's investigation.

1

The particulars of that dispute are as follows. In her initial disclosure, Plaintiff listed the names of forty-eight of Defendants' former employees as potential witnesses, but provided no further identifying information. Defendants sought the contact information of those forty-eight potential witnesses listed in Plaintiff's Initial Disclosures. Defendants propounded an interrogatory seeking the identity of any of those individuals who were interviewed by or provided a statement to the Department of Labor ("Interrogatory 3"). Defendants propounded a request for production seeking any affidavits or written or recorded statements of any person regarding any claims or defenses in this lawsuit ("Request for Production 1"). Defendants also propounded a request for production seeking Investigator Ramon Delgado's entire investigation file from the investigation of New China Buffet #8, Inc., and Yun Da Chen ("Request for Production 3").

Plaintiff refused those requests, claiming that the information sought was protected by the government's informer's privilege. Specifically, Plaintiff refused to turn over any addresses or telephone numbers for any of those forty-eight potential witnesses and refused to identify the individuals that were interviewed or that provided statements. Plaintiff turned over the investigative file, but with the names and contact information of witnesses and other information that Plaintiff deemed as tending to identify the witness redacted.

A mutually agreeable compromise not forthcoming, Defendants filed this motion to compel, seeking the requested information.

## II. DISCUSSION

Defendants mount two arguments against Plaintiff's refusal to disclose the requested information and documents. First, they argue that Plaintiff has not properly invoked the informer's privilege. Second, they argue that the informer's privilege should not protect the information they are seeking. The Court will address each argument in turn.

A. Invocation of the Privilege

Defendants first contend that Plaintiff did not properly invoke the privilege in response to the interrogatory and requests for production. In order for the Government to properly invoke the privilege "[t]here must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." United States v. Reynolds, 345 U.S. 1, 7-8, 73 S. Ct. 528, 532 (1953) (footnote omitted). The formal invocation of the privilege, however, need not come until the Government is faced with a motion to compel. See In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997); Tri-State Hosp. Supply Corp. v. United States, 226 F.R.D. 118, 134 n.13 (D.D.C. 2005) ("[T]he government had no obligation to formally invoke the privilege in advance of the motion to compel."); Huntleigh USA Corp. v. United States, 71 Fed. Cl. 726, 727 (2006) ("[T]he procedural requirements for asserting the privilege are satisfied through the production of a declaration or affidavit by the agency head, and produced in response to a motion to compel.") (internal quotation marks omitted)).[1]

Plaintiff properly invoked the informer's privilege in this case. In response to Defendants' Motion to Compel, Plaintiff produced a declaration from Acting Wage and Hour Administrator Nancy J. Leppink.[2] In her declaration, Administrator Leppink stated that she had personally reviewed the relevant parts of the investigation file, including information withheld or redacted.

---

[1] Although these cases concern other privileges, such as the deliberative process privilege, the "requisites for formal invocation of the privilege have been uniformly applied irrespective of the particular kind of executive claim advanced." United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980) (internal quotation marks omitted).

[2] Generally, an agency head may delegate the responsibility for invoking a government privilege to a high-ranking subordinate. Chao v. Westside Drywall, Inc., 254 F.R.D. 651, 657 (D. Or. 2009). According to Administrator Leppink's declaration, the Secretary of Labor has specifically delegated the authority to invoke any necessary governmental claim of privilege to the Administrator or Acting Administrator. [Doc. 34-1 ¶ 6].

[Doc. 34-1 ¶ 8]. She went on to the state that the Secretary of Labor objected to the production of the requested documents and identifying information because it was protected from disclosure pursuant to the informant's privilege. [Id. ¶ 11]. She then "invoke[d] the informant's privilege to protect from disclosure the identities, and any statements and other documents, or portions thereof, which could reveal the identifies, of persons who have provided information to the U.S. Department of Labor in the instant case." [Id. ¶ 12].

B. Application of the Privilege

What courts have termed the "informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Rovario v. United States, 353 U.S. 53, 59, 77 S. Ct. 623, 627 (1957). The privilege protects "employees with legitimate complaints, exercising their constitutional and statutory right to present their grievances to the government." Brennan v. Engineered Prods. Inc., 506 F.2d 299, 302 (8th Cir. 1974). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." Rovario, 353 U.S. at 59, 77 S. Ct. at 627. The government may invoke the privilege "to conceal the names of employees who precipitated the suit by filing complaints with the Department of Labor." Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1072 (9th Cir. 2000). The privilege "applies whether the [Department of Labor] solicited statements from an employee or the employee made a complaint to the [Department of Labor]." Martin v. New York City Transit Auth., 148 F.R.D. 56, 63 (E.D.N.Y. 1993) (citing Dole v. Local 1942, International Bhd. of Elec. Workers, AFL-CIO, 870 F.2d 368, 370-71 (7th Cir. 1989)). The privilege applies to both current and former employees of a company whose workers have communicated with the Department of Labor. Hodgson v. Charles Martin Inspectors of Petroleum, Inc., 459 F.2d 303, 305-06 (5th Cir. 1972).

The informer's privilege is not absolute. Its scope is "limited by the underlying purpose of the privilege as balanced against the fundamental requirements of fairness and disclosure in the litigation process." Charles Martin, 459 F.2d at 305. If the "disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." Rovario, 353 U.S. at 60, 77 S. Ct. at 627. Generally, in questions involving the privilege, "the interests to be balanced . . . are the public's interest in efficient enforcement of the Act, the informer's right to be protected against possible retaliation, and the defendant's need to prepare for trial." Charles Martin, 459 F.2d at 305. The defendant's need for certain information is generally less weighty during the discovery phase, as opposed to the pre-trial stage of the proceedings. See id. at 307, Brennan, 506 F.2d at 303.

In Interrogatory 3, Defendants sought the identity of any individuals listed in Appendix A, the list of former employees who were likely to have discoverable information provided in Plaintiff's Initial Disclosures, who were interviewed or who provided a statement during the investigation of this matter by the Wages and Hour Division of the United States Department of Labor. Defendants contend that identification of the witnesses who provided statements to the Department of Labor is vital to their defense because the case is based in whole or in part on individualized accusations of FLSA violations. According to Defendants, they are unable to prepare an adequate defense of this case without knowledge of the identity of the accusers. Defendants further argue that Plaintiff's need for withholding the identity of former employees who have been interviewed by or given statements to the Department of Labor is weak in this case. Defendants contend that the possibility of retaliation is remote in this case because none of the witnesses have been employed by Defendants for over twenty-one months and because Defendants no longer own

5

or operate New China Buffet #8 or any other restaurant.[3] Finally, Defendants argue that Plaintiff waived the informer's privilege by disclosing the names of the forty-eight former employees in the Initial Disclosures.

The aim of Interrogatory 3 is clear: "Defendants are seeking the identities of the individuals who actually provided statements to Plaintiff's agent during the investigation." [Doc. 30 at 6]. Of course, the identity of those who provided statements to the Department of Labor during an investigation is the quintessential information protected by the informer's privilege. None of Defendants' arguments are sufficient to overcome the privilege as to that information.

Defendants argument that they cannot adequately defend this case without knowing the identity of the employees that gave statements during the investigation boils down to concerns of time and money. As Defendants concede, they could "admittedly . . . depose all 48 of the named witnesses once their contact information is provided by Plaintiff, [but] such an undertaking would be extremely costly and inefficient." [Doc. 30 at 7]. The Defendants' need to depose all forty-eight former employees listed in Appendix A, or even only those who provided statements, in order to adequately prepare a defense appears far from pressing. The relevance of the identity of informers in a FLSA case is often questionable. See Chao v. Westside Drywall, Inc., 254 F.R.D. 651, 660 (D. Or. 2009) (noting that "the names of informers are [often] irrelevant to whether the employer properly paid its employees and otherwise complied with the Act's requirements"). Defendants have failed to make any showing that this case is outside the normal situation wherein a defendant has access to information and its own witnesses regarding its wage and record keeping practices,

---

[3] New China Buffet #8, Inc., was dissolved in 2009. Defendant Chen does not currently own or operate New China Buffet #8 or any other restaurant.

and the identity of informers is largely irrelevant.[4]  In any event, courts have generally found that the cost and inconvenience that Defendants seek to avoid does not tip the balance in favor of disclosure.  See Charles Martin, 459 F.2d at 307 ("[T]hat depositions would be expensive show that the statements would facilitate defendant's investigation but such facilitation is not a requirement for fundamental fairness to the defendant."); Brennan, 506 F.2d at 303 & n.3 (noting that at the discovery stage defendant was entitled to know "the charges, dates, names of underpaid employees, and names of those persons known to the plaintiff who had information concerning the issues" and that defendant had the ability to depose nineteen workers listed as possessing such information).

Defendants' argument that the possibility of retaliation is low in this case because Defendants no longer employ any of the possible witnesses or operate a restaurant strikes a common theme in FLSA cases.  It is also, however, an unsuccessful theme.  As the Fifth Circuit observed in Charles Martin, "The possibility of retaliation . . . is far from being 'remote and speculative' with respect to former employees . . . ."  459 F.2d at 306.  Employees may require references from a former employer.  Id.  Employees may face retaliation at a new job if they are branded as informers.  Id.  Former employees may even find it necessary to see reemployment with the defendant.  Id.  All of these possibilities expose former employees of a FLSA defendant to the real risk of retaliation if they are identified as informers.  The facts of this case make the risk all the more concrete. Although Defendant Chen and Defendant New China Buffet #8, Inc., no longer own or operate the New China Buffet, the restaurant continues in existence with the same name and under new ownership. Former employees of Defendant Chen and Defendant New China Buffet #8, Inc., might

---

[4] If Defendants seek the identity and statements of the informers for impeachment purposes, then the pretrial stage is the more appropriate time to address that concern.  See Charles Martin, 459 F.2d at 307.

7

seek to continue employment at the restaurant, or may wish to return to the restaurant at some point. Although Defendant Chen no longer owns and operates the restaurant, evidence produced by Plaintiff shows a continuity of operation that raises a real risk of retaliation against former employees wishing to stay on or seeking to return. Defendant Chen still owns the land and building and leases them to the new owner. Defendant Chen's wife has also served as the financial advisor, Chief Financial Officer, and Secretary of the new owner. [See Deposition of D&D Restaurant Inc.]. That evidence only strengthens the normal conclusion that the risk of retaliation against former employees is not "remote and speculative."

Defendants' argument that Plaintiff waived the informer's privilege by disclosing the list of employees that may have knowledge regarding the case and on behalf of whom she was making claims is also a common and unsuccessful argument. Disclosure of the identity of an informer vitiates the privilege. Roviaro, 353 U.S. at 60, 77 S. Ct. at 627 ("[O]nce the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable."). Providing a list of employees that may have knowledge pertinent to the case, however, is not the same as identifying employees that have provided information to the Department of Labor. See Local 1942, 870 F.2d at 375 ("But merely labeling these individuals as 'knowledgeable,' while expressly invoking the informer's privilege, is obviously not tantamount to waiver. That these individuals are knowledgeable does not mean . . . that those people actually supplied information to the Secretary."). The assumption that most or all of the employees properly classified as informers are on that list is likely a sound one, but the list itself does nothing to disclose who amongst those employees are the informers. In other words, all the informers may be listed in Appendix A, but not everyone listed in Appendix A is an informer. And for purposes of the privilege, listing a former employee in Appendix A does not go nearly far enough in identifying

8

them as an informer to waive the privilege.

In response to Requests for Production 1 and 3, Plaintiff produced witness statements with the name, address, age, employment period, job title, and rate of pay redacted. Plaintiff contends that the redaction was necessary because the information would tend to reveal the identity of the informer. Courts have accorded varying levels of protection to the contents of an informer's statement, but the rule laid down by the Supreme Court in Roviaro is that "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." 353 U.S. at 60; 77 S. Ct. at 627.

In this case, the information redacted by Plaintiff would tend to reveal the identity of the informer. The tendency of the statement giver's name and address to reveal his identity is self evident. Whether any other single piece of information relating to the statement giver's age, employment period, job title, or rate of pay would reveal his identity is less clear. Perhaps job title or rate of pay alone would not. But the aggregation of any two of those pieces of information, much less all four, would likely narrow down if not outright reveal the identity of the informer; thus, the redaction of that information is protected by the privilege as well.

The final, and more difficult, question concerns the contact information for the persons listed in Appendix A. Rule 26 of the Federal Rules of Civil Procedure mandates that a party must provide as part of its initial disclosures the name and, if known, the address of individuals likely to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A)(i). Plaintiff's primary concern in withholding the addresses of the persons listed in Appendix A appears to be that disclosing that information will necessarily identify those individuals who gave witness statements to the Department of Labor. In light of those concerns, the Court required Plaintiff to disclose an unredacted copy of Appendix A along with a list responsive to Interrogatory 3 for *in camera* inspection.

Having consulted those materials, the Court concludes that compliance with Rule 26(a)(1)(A)(i) would not tend to identify individuals who gave statements to the Department of Labor. If the Department of Labor only had contact information for the former employees it had interviewed, then turning over the list of employees in Appendix A with known addresses would tend to identify employees who had spoken with the Department. That, however, is not the case here. There is no particular correlation between the list of employees interviewed and the individuals listed in Appendix A for whom the Department of Labor has contact information. There is another, less direct, way in which turning over the contact information for the employees listed in Appendix A might tend to disclose who the Department of Labor interviewed. Any discrepancies in contact information between the contact information Defendants might already have and the contact information in the hands of the Department of Labor might be used to attempt to infer who the Department interviewed. But absent a showing that any discrepancies in contact information between the parties is highly correlated to the list of employees interviewed by the Department, there is no reason to believe that disclosure of the contact information for all the employees listed in Appendix A would tend to identify anyone interviewed by the Department. There is no such showing in this case; thus, any risk that any possible differences in information might tend to disclose the identity of informers is far too speculative to trigger the protection of the informer's privilege. Under these circumstances, Plaintiff must complete her Rule 26(a) disclosure.

The information requested in Interrogatory 3 and the redactions in response to Requests for Production 1 and 3 are protected by the informer's privilege. To the extent that Defendants' Motion to Compel [Doc. 29] seeks that information, the motion is **DENIED**. The informer's privilege does not justify Plaintiff's refusal to complete the Rule 26(a) disclosure. To the extent Defendants' Motion seeks the contact information of former employees listed in Appendix A, the Motion is

**GRANTED**.

      SO ORDERED this 1st day of July, 2011.


                                            <u>S/ C. Ashley Royal</u>
                                            C. ASHLEY ROYAL, JUDGE
                                            UNITED STATES DISTRICT COURT



bcw